In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-2770

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RENARD R. BUTLER,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:14-cr-00022-RTR-1 — **Rudolph T. Randa**, *Judge.*

ARGUED DECEMBER 8, 2014 — DECIDED JANUARY 15, 2015

Before BAUER and HAMILTON, *Circuit Judges*, and ELLIS,
*District Judge.*[*]

BAUER, *Circuit Judge*. Defendant-Appellant, Renard R.
Butler ("Butler"), was convicted on two counts of violating 18
U.S.C. § 472 and sentenced to 24 months' imprisonment. On
appeal, he argues that the district court erred in calculating

---

[*] The Honorable Sara Lee Ellis, of the United States District Court for the
Northern District of Illinois, sitting by designation.

his sentence by improperly assigning two criminal history points to a prior state conviction for forgery. Butler contends that the conduct underlying this prior conviction is part of the instant offense and, as such, should be considered relevant conduct under U.S.S.G. § 1B1.3 instead. We affirm.

## I. BACKGROUND

On August 20, 2012, Butler was detained following a traffic stop in Milwaukee, Wisconsin, and arrested after the police detected marijuana. Upon searching Butler, the officers discovered several counterfeit federal reserve notes of varying denominations in Butler's pockets. A subsequent investigation by the United States Secret Service revealed that Butler and two others had been manufacturing counterfeit notes earlier that day in a Milwaukee residence. Agents searched the residence and found a color printer along with a bag containing numerous misprints of counterfeit notes. Butler admitted to agents that he had purchased resume paper earlier that day to manufacture counterfeit currency and had sold the counterfeit notes to others. However, he was released from custody and not charged.

Several months later, in January 2013, Butler became a suspect in a series of counterfeit transactions involving vehicle purchases in the Milwaukee area. The first of these transactions occurred on January 9, 2013, when Butler contacted a vehicle seller, T.V., who had listed a Cadillac Eldorado for sale online. At a meeting later that day, Butler passed T.V. an envelope containing $1,400 in exchange for the car. After the transaction, T.V. discovered that the money he had received was counterfeit and contacted the police. When the police showed T.V. a

photo array of potential suspects, T.V. identified Butler as the buyer.

The second transaction occurred on January 20, 2013, when Butler contacted the seller of another vehicle, A.G., who had listed a Buick Roadmaster for sale online. They arranged a meeting for later that day, at which Butler passed A.G. an envelope containing $1,500 in exchange for the vehicle. Similar to the seller in the first transaction, A.G. discovered later that the money contained in the envelope was counterfeit and contacted the police. Upon viewing a photo array of potential suspects, A.G. identified the buyer as Butler. Police also recovered Butler's fingerprints from the envelope.

The third and final transaction occurred on January 23, 2013, when Butler contacted a seller, J.D., who had listed a Buick Regency for sale online. At a subsequent meeting later that day, Butler paid J.D. $1,100 in exchange for the vehicle. Shortly thereafter, J.D. suspected that the money that he had received was counterfeit and contacted the police. J.D. reviewed a photo array of potential suspects and identified Butler as the person who purchased his vehicle.

Over a year later, in February 2014, a grand jury returned a four-count indictment charging Butler with various violations of 18 U.S.C. § 472. At the time of his arraignment, Butler was serving a 90-day state sentence in Wisconsin for forgery. This conviction stemmed from an August 2013 arrest in Green Bay, Wisconsin. According to the complaint in that case, Butler had started printing counterfeit currency in Green Bay, which he used to purchase large amounts of marijuana, and then helped others make and obtain counterfeit currency.

Upon his release from state custody, Butler appeared before the district court, pleaded guilty, and was convicted of Counts One and Three of the federal indictment. Count One, possession of counterfeit securities of the United States, flowed from the August 2012 traffic stop in Milwaukee. Count Three, utterance of counterfeit securities of the United States, flowed from the transaction with A.G. on January 20, 2013, during which he passed counterfeit notes in exchange for a vehicle.

In connection with Butler's sentencing, the presentence report ("PSR") assigned Butler nine points as a base offense level. U.S.S.G. § 2B5.1(a). Due to the amount of counterfeit currency found on Butler following his August 2012 traffic stop arrest, as well as the total amount of counterfeit money exchanged during the three vehicle transactions in January 2013, the PSR held Butler responsible for the possession, distribution or utterance of $4,186 in counterfeit notes and assigned a one-level increase based on that total. U.S.S.G. § 2B5.1(b)(1)(A) (providing a one-level increase where the face value of the counterfeit items "exceeded $2,000 but did not exceed $5,000"). Pursuant to § 2B5.1(b)(2)(A) and (b)(3) of the Guidelines, Butler received an additional three-level increase because he assisted in the production of counterfeit notes and possessed a counterfeiting device. U.S.S.G. § 2B5.1(b)(2)(A) (providing a two-level increase if a defendant "manufactured or produced any counterfeit obligation or security of the United States, or possessed or had custody of or control over a counterfeiting device or materials used for counterfeiting"); U.S.S.G. § 2B5.1(b)(3) (providing that "if (b)(2)(A) applies, and the offense level determined under that subsection is less than level 15, increase to level 15"). Factoring in a two-level decrease

for acceptance of responsibility, the PSR assigned Butler a total offense level of 13 points.

Butler also received eight criminal history points, placing him in Criminal History Category IV. Included among Butler's prior offenses was the state forgery conviction for which Butler had served a 90-day sentence prior to the instant conviction. Under the Guidelines, the combination of Butler's total offense level of 13 and Category IV produces a range of 24–30 months.

Prior to sentencing, Butler's counsel submitted a detailed sentencing memorandum in which he advocated for a sentence of 30 days' imprisonment. In addition to providing the court with information about Butler's upbringing and personal life, Butler's counsel argued that adhering to the Guidelines range "properly calculated" by the PSR "produces a sentence greater than necessary to meet the goals of sentencing." In support of this position, defense counsel raised several arguments under § 3553(a). Specifically, he contested the application of § 2B5.1(b)(2)(A) and (b)(3), arguing that Butler's means of manufacturing counterfeit currency did not rise to the level of sophistication and planning intended by the Guidelines. Defense counsel also argued that several of Butler's criminal history points were "improperly assigned" and that Butler's 2013 state conviction for forgery "should be viewed as part of the instant offense, not as criminal history." As to the latter argument, defense counsel contended that the conduct that gave rise to the state forgery conviction was part and parcel of the behavior that led to the instant offense. As such, "under § 3553(a), the two criminal history points assigned by the guidelines for the [state] conviction [should be] disregarded." Relatedly, he also argued that Butler should receive time

served credit for the 90 days that he spent in custody for the state forgery conviction.

At sentencing, neither party raised objections to the factual statements contained in the PSR. When invited to present arguments in favor of his sentencing recommendation of 30 days, defense counsel expounded on the arguments set forth in his sentencing memorandum. Ultimately, the court adopted the within-Guidelines sentence recommended by the government and sentenced Butler to 24 months' imprisonment. This appeal followed.

## II.  ANALYSIS

The threshold issue in Butler's appeal is whether he fully waived or merely forfeited his right to appeal his Guidelines calculation. The government argues that Butler waived any claim of error in the calculation of his sentence because he did not affirmatively object to the PSR. Butler concedes that he did not directly challenge his Guidelines calculation but argues that he merely forfeited the right to challenge it on appeal because his failure to affirmatively object to the PSR at sentencing was due to negligence.

The distinction between waiver and forfeiture carries great weight. Under Federal Rule of Criminal Procedure 52(b), courts of appeals have "a limited power to correct errors that were forfeited because not timely raised in district court." *United States v. Olano*, 507 U.S. 725, 731 (1993). "Mere forfeiture, as opposed to waiver, does not extinguish an 'error' under Rule 52(b)," but permits review for plain error. *Id.* at 733. However, determining whether a defendant has waived or forfeited his legal rights is not always an easy exercise, as "the

line between waiver and forfeiture is often blurry." *United States v. Garcia*, 580 F.3d 528, 541 (7th Cir. 2009). To distinguish between the two, "we examine a party's state of mind at the time that an objection could have been raised." *United States v. Anderson*, 604 F.3d 997, 1001 (7th Cir. 2010). Waiver is the intentional relinquishment of a known right. *Olano*, 507 U.S. at 733; *United States v. Jaimes-Jaimes*, 406 F.3d 845, 847 (7th Cir. 2005). By contrast, forfeiture is "the failure to make the timely assertion of a right." *Olano*, 507 U.S. at 733. Forfeiture occurs by accident or neglect, rather than through the manifestation of an intentional choice not to assert a right. *United States v. Cooper*, 243 F.3d 411, 416 (7th Cir. 2001); *United States v. Staples*, 202 F.3d 992, 995 (7th Cir. 2000).

Waiver principles are construed liberally in favor of the defendant. *Anderson*, 604 F.3d at 1002. There is no rigid rule for finding waiver; rather, we evaluate each omission individually to determine whether, as a matter of strategy, the defendant made a calculated choice to stay silent on a particular issue, thereby waiving his right to challenge that matter on appeal. *Id.* at 1001; *Jaimes-Jaimes*, 406 F.3d at 848 ("There may be sound strategic reasons why a criminal defendant will elect to pursue one sentencing argument while also choosing to forego [sic] another, and when the defendant selects as a matter of strategy, he also waives those arguments he decided not to present."). Thus, while we have found waiver where either a defendant or his lawyer expressly declined to press a right or to make an objection to a sentencing enhancement, *see Garcia*, 580 F.3d at 542; *Staples*, 202 F.3d at 995; *United States v. Redding*, 104 F.3d 96, 99 (7th Cir. 1996), "we do not read our cases as establishing an inflexible rule that every objection not raised at

a sentencing hearing is waived." *Jaimes-Jaimes*, 406 F.3d at 848. *See also Anderson,* 604 F.3d at 1001; *United States v. Allen*, 529 F.3d 390, 395 (7th Cir. 2008). In order to determine whether the defendant intended to forgo a legal argument, we must draw inferences from the record and the surrounding circumstances. *See Garcia*, 580 F.3d at 542 (holding that this inquiry requires some "conjecture" and an evaluation of the record as a whole).

Applying these standards, we find that Butler forfeited his legal right to challenge the district court's calculation of the Guidelines. Although neither Butler nor his counsel affirmatively objected to the Guidelines calculation, the record indicates that this omission was due to defense counsel's oversight, rather than the result of a deliberate and strategic choice to pursue one sentencing argument while forgoing another. Defense counsel clearly objected in both a detailed sentencing memorandum and his argument at the sentencing hearing to the inclusion of the state forgery offense within Butler's criminal history, and argued that the two points attributable to that offense should be disregarded by the court. Undoubtedly, defense counsel should have articulated this objection as a challenge to the Guidelines calculation, rather than advancing it to support a downward variance under § 3553(a). However, doing so would not have prevented defense counsel from also presenting a mitigation argument. Because the government offers no strategic reason for why Butler would have opted to bypass a direct challenge to the Guidelines calculation, and we cannot conceive of one, Butler's failure to properly raise this objection constitutes forfeiture. *See Jaimes-Jaimes*, 406 F.3d at 848.

Nevertheless, Butler's appeal fails because he cannot satisfy the "remarkably demanding" plain error test. *Anderson*, 604 F.3d at 1002 (quoting *United States v. Salazar*, 453 F.3d 911, 913 (7th Cir. 2006)). Under plain error review, the defendant has the burden of showing: (1) an error or defect that (2) is clear or obvious and (3) affects the defendant's substantial rights. *Olano*, 507 U.S. at 736. Even if the defendant can meet this burden, this court is not required to order a correction of the error, but may exercise its discretion to do so if the error seriously impugns the fairness, integrity or public reputation of the judicial proceedings. *Id.* at 736. Under the facts presented in the instant appeal, Butler cannot show that the district court's failure to consider his state conviction for forgery as relevant conduct under U.S.S.G. § 1B1.3 meets the standard for plain error.

Section 4A1.2 of the Guidelines provides that "[t]he term 'prior sentence' means any sentence previously imposed upon adjudication of guilt, whether by plea, trial, or plea of *nolo contendere*, for conduct not part of the instant offense." U.S.S.G. § 4A1.2. The Application Notes to § 4A1.2 provide that "a sentence imposed after the defendant's commencement of the instant offense, but prior to sentencing on the instant offense, is a prior sentence if it was for conduct other than conduct that was part of the instant offense." U.S.S.G. § 4A1.2 cmt. n.1. Further, "[c]onduct that is part of the instant offense means conduct that is relevant conduct to the instant offense under the provisions of § 1B1.3." *Id.* Under § 1B1.3, relevant conduct includes "all acts and omissions committed … by the defendant … that occurred during the commission of the offense of conviction … ." U.S.S.G. § 1B1.3(a)(1)(A). Since

Butler's offenses under § 2D5.1 were properly grouped together pursuant to § 3D1.2(d), relevant conduct also includes all acts "that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2).

It is undisputed that Butler's 90-day sentence for forgery was imposed after the conduct underlying the instant offense, but prior to sentencing on the instant offense. Butler maintains, however, that the offense conduct associated with the forgery conviction does not fall within the ambit of § 4A1.2 because that conviction was the last in an unabated series of counterfeiting offenses that culminated in the instant conviction. We disagree. While it is "well established that in determining a defendant's sentence a court may consider a broad range of information," *United States v. Valenti*, 121 F.3d 327, 334 (7th Cir. 1997), with respect to whether a defendant's prior conduct should be considered relevant conduct under § 1B1.3, the court looks to the "similarity, regularity, and temporal proximity of the uncharged acts to the offense of conviction." *United States v. Sykes*, 7 F.3d 1331, 1336 (7th Cir. 1993). If one of those three factors is not present, the court must look for "a stronger presence of at least one of the other factors." U.S.S.G. § 1B1.3 cmt. n.9(B). In Butler's case, the similarities between the instant offense and the state forgery conviction are minimal. The fact that both offenses involve counterfeit currency does not, independently, demonstrate that they are part of the same course of conduct. The Guidelines compel us to conduct a more searching inquiry to determine whether there are distinctive similarities between the offense of conviction and the prior conduct that indicate that they are not isolated,

unrelated events that happen only to be similar in kind. Where, as here, the prior conduct takes place over one hundred miles away from the conduct underlying the instant offense, is relatively remote temporally, and involves entirely different victims, means, and purposes, we cannot say that it is sufficiently connected to the instant offense to qualify as part of the same course of conduct for the purposes of § 1B1.3.

Furthermore, even assuming, *arguendo*, that this prior conduct should have been considered relevant conduct, Butler cannot show that such an error affected his substantial rights. Butler argues that he was prejudiced by the district court's assignment of two extra points to his criminal history score because his Criminal History Category increased from III to IV. While it is true that, had Butler been placed in Category III instead of IV, his corresponding Guidelines range would have decreased from 24–30 to 18–24 months, Butler has not shown—and the record does not compel us to find—that the district court would have imposed a lower sentence. *See Olano*, 507 U.S. at 734 (holding that the requirement that a plain error "affects substantial rights" means that the error must have affected the outcome of the district court proceedings).

The district court sentenced Butler to 24 months' imprisonment, which corresponds to the low end of the Guidelines range accepted by the district court at sentencing and the high end of the Guidelines range proposed by Butler on appeal. "We have held that 'where two Guidelines ranges overlap … the technical dispute over which range to apply may be left unresolved … [a]s long as it is reasonable to conclude that the same sentence would have been imposed regardless of the outcome of the dispute over which range to apply.'" *Emezeo v.*

*United States*, 357 F.3d 703, 711 (7th Cir. 2004) (quoting *United States v. Howard*, 179 F.3d 539, 545 (7th Cir. 1999)). Here, it appears from the record that the district court would have imposed the same sentence of 24 months, regardless of whether it was at the top or bottom of the applicable Guidelines range. According to the transcript from the sentencing hearing, the district court determined that 24 months was an appropriate sentence by considering the offense conduct, the history and characteristics of the defendant, and related factors under § 3553(a), in addition to acknowledging that "the guidelines got it right." The district court also frequently referenced Butler's extensive criminal history, which, even excluding the forgery offense, indicated to the court a disrespect for the law. From all of this, we conclude that the district court engaged in a "thoughtful and meaningful review of the facts … in determining an appropriate sentence," *United States v. Hill*, 645 F.3d 900, 912 (7th Cir. 2011), and have no reason to believe that the court would have imposed a sentence lower than 24 months if given the opportunity to do so. Accordingly, even if the district court erred in its calculation of the Guidelines, such error does not affect Butler's substantial rights.

## III.  CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.