In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-2294

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

STEVEN WALDRIP, a/k/a "STEVE-O",

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 14-cr-40050 — **Sara Darrow**, *Judge.*

ARGUED APRIL 4, 2017 — DECIDED JUNE 12, 2017

Before WOOD, *Chief Judge*, and KANNE and ROVNER, *Circuit Judges.*

KANNE, *Circuit Judge.* A jury convicted Steven Waldrip of distributing heroin under the Controlled Substances Act, 21 U.S.C. § 841(a)(1). Because death resulted from the use of that heroin, Waldrip faced a twenty-year mandatory-minimum sentence. § 841(b)(1)(C). The district court sentenced him to 280 months. On appeal, Waldrip argues that the government provided insufficient evidence to prove that

the heroin was a but-for cause of the victim's death, that § 841(b)(1)(C) is unconstitutionally vague, and that his 280-month sentence violates the Eighth Amendment's proportionality requirement. We reject those claims.

## I. BACKGROUND

This case concerns a drug deal between Waldrip and Kathi Sweeney and Kyle Wilson. Sweeney and Wilson's relationship had an inauspicious beginning: they met at a rehab facility in Rock Island, Illinois, where each was receiving treatment—Sweeney for alcoholism and Wilson for heroin addiction. Wilson's stay was short lived. After just three days, he decided that the treatment was ineffective and left. But before he left, Sweeney agreed to take him to a different facility once she left the one in Rock Island.

After she had completed her treatment, Sweeney picked Wilson up at a bus stop, intending to take him to another rehab facility. Wilson testified that Sweeney was "highly intoxicated" and that she asked him if he "wanted to get high one more time" before going back to rehab. (R. 60 at 57.) Wilson said yes and began calling known dealers. After unsuccessfully reaching out to several others, Wilson called Waldrip, his go-to guy for heroin over the previous year.

After reaching Waldrip, Sweeney and Wilson drove to Waldrip's house. Waldrip got into Sweeney's car and gave Sweeney directions to another location. There, Sweeney and Wilson gave Waldrip forty dollars for two bags of heroin—each containing one-tenth of a gram. Waldrip left and returned about an hour later with the heroin. Afterwards, Sweeney and Wilson took Waldrip back to his house.

Sweeney then drove Wilson to a local CVS, where she purchased the necessary supplies for injecting heroin. In the parking lot, Wilson injected himself and Sweeney.

Sweeney reacted to the heroin almost immediately, locking up and passing out. After initially panicking and leaving, Wilson returned to the car and started to take Sweeney to a hospital. But on the way, Sweeney woke up and told him to take her home. There, Wilson put a bag of frozen peas on Sweeney's chest while she lay on her couch—an apparent attempt at preventing Sweeney from dying. Wilson stayed at Sweeney's house that night.

The next morning, Wilson woke up suffering from withdrawal symptoms. Wilson needed heroin but lacked money, so he stole some of Sweeney's belongings to pawn for cash. He then left Sweeney's house for good. Later that day, Sweeney's sister found Sweeney dead on the couch.

Wilson claimed that Sweeney was alive when he left her house and that he did not know Sweeney was dead until the next day when a detective stopped him and started questioning him. Additional investigation led detectives to Waldrip. Several weeks later, in return for a reduced sentence, Wilson agreed to testify that Waldrip sold Sweeney and Wilson the heroin. Officers arrested Waldrip after an undercover DEA agent bought heroin from Waldrip three separate times. The government charged Waldrip with one count of distributing heroin to Sweeney and Wilson and three counts of distributing heroin to the undercover agent. § 841(a)(1). Because Sweeney died from using the heroin that Waldrip sold, the government sought an enhanced sentence under § 841(b)(1)(C) for count one. Waldrip pled guilty to the last three counts but went to trial on the first.

At trial, Waldrip agreed to stipulate that two government experts—one a pathologist and the other a forensic toxicologist—would testify that, but for her use of heroin right before her death, Sweeney would not have died. Both stipulations were read to the jury during the government's case-in-chief.

After the government rested, Waldrip made a Rule 29 motion for judgment of acquittal. Waldrip's counsel told the district judge that he was "not challenging that the heroin caused the death" but that it was Waldrip who delivered the heroin. (R. 61 at 160–61.) The judge denied the motion. Then, without presenting any evidence, Waldrip rested and renewed his Rule 29 motion "on the same basis" as the first. (R. 61 at 164.) Because nothing had changed in the few minutes since the first ruling, the judge again denied the motion. The jury convicted Waldrip of selling the heroin that caused Sweeney's death.

Because § 841(b)(1)(C) imposes a twenty-year mandatory-minimum sentence on one who distributes a controlled substance, including heroin, and "death … results from the use of such substance," the district court sentenced Waldrip to 280 months.[1] Waldrip objected to the sentence, arguing that the sentence would violate his Fifth Amendment equal-protection rights and would deny him his Sixth Amendment right to effective assistance of counsel. The district court rejected both of those arguments. This appeal followed.

---

[1] The district court also sentenced Waldrip to 240 months for the three distribution counts that he pled guilty to, to be served concurrently.

## II. ANALYSIS

Rather than contest the district court's rulings on his Rule 29 motions and constitutional challenges to his sentence, Waldrip makes new arguments on appeal. Waldrip challenges his conviction by arguing that the government provided insufficient evidence to prove that the heroin was a but-for cause of Sweeney's death. Waldrip also makes new constitutional arguments about his sentence. First, he argues that the increased penalty for distributing a controlled substance, the use of which results in death, is unconstitutionally vague because it does not require the defendant to intend or know that the controlled substance will cause death. Second, he argues that his 280-month sentence on count one violates the Eighth Amendment's proportionality principle. We reject those arguments below.

### A. Sufficiency of the Evidence

The Supreme Court has held that, at least when "the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) unless such use is a but-for cause of the death or injury." *Burrage v. United States*, 134 S. Ct. 881, 892 (2014). Waldrip argues that the government provided insufficient evidence to prove that the heroin caused Sweeney's death. But he waived that argument by expressly declining to raise it at the district court.

"Waiver is the intentional relinquishment of a known right" and precludes appellate review by extinguishing any error that occurred. *United States v. Burns*, 843 F.3d 679, 685 (7th Cir. 2016) (quoting *United States v. Butler*, 777 F.3d 382,

387 (7th Cir. 2015)). We consider the record as a whole when deciding if a party *knowingly* decided not to raise an argument as opposed to negligently failed to raise it. *Id.* at 685–86. "[T]he important concern is whether a defendant chose, as a matter of strategy, not to present an argument." *Id.* at 685 (quoting *United States v. Garcia*, 580 F.3d 528, 541 (7th Cir. 2009)).

While making the first Rule 29 motion for judgment of acquittal, Waldrip's counsel told the district judge that he was "not challenging that the heroin caused" Sweeney's death. (R. 61 at 160.) Counsel instead argued only that the government presented insufficient evidence to prove that Waldrip sold the heroin to Sweeney and Wilson. When renewing the motion moments later, counsel stated that he was renewing the motion "on the same basis" as the earlier motion. (R. 61 at 164.) And during closing argument, counsel told the jury that "we're not contesting whether Miss Sweeney died by a heroin overdose." (R. 77 at 32.) There is no clearer example of an intentional relinquishment of a known right than this: a defendant cannot explicitly tell the judge and jury that he is not making a particular argument and then try to make that exact argument on appeal.

And the strategic rationale for not making the but-for cause argument at the district court is obvious: Waldrip stipulated that, if called, two government experts would testify that, but for the heroin, Sweeney would not have died. Waldrip presented no counter evidence to the experts' reports (or any evidence for that matter). Arguing for a judgment of acquittal with those facts would have been futile.

Waldrip cites *United States v. Rea* for the proposition that we review waived arguments for a manifest miscarriage of

justice under plain-error review. 621 F.3d 595, 601–02 (7th Cir. 2010). Taken at face value, *Rea* and a host of other cases support Waldrip's argument. *See, e.g.*, *United States v. Hickok*, 77 F.3d 992, 1002 (7th Cir. 1996). But pulling favorable language from those cases ignores the well-known rule that we do not review waived arguments. The confusion created by *Rea* and cases that use similar language stems from our lax use of the terms "waiver" and "forfeiture." *See United States v. Adigun*, 703 F.3d 1014, 1021 (7th Cir. 2012); *see also Freytag v. Comm'r*, 501 U.S. 868, 894 n.2 (1991) (noting that the Supreme Court has used waiver and forfeiture interchangeably even though they are different). Waiver and forfeiture are related but distinct concepts. *United States v. Olano*, 507 U.S. 725, 733 (1993). Waiver, as discussed above, occurs when a party intentionally relinquishes a known right. Forfeiture, on the other hand, occurs when a party accidentally or negligently fails to raise an argument at the district court. *Burns,* 843 F.3d at 685. While we review forfeited arguments for plain error (the standard of review that Waldrip wants here), waiver extinguishes any error and precludes review. *Olano*, 507 U.S. at 733; Fed. R. Crim. Pro. 52(b).

Despite the confusion that this court and others have created by using waiver to mean forfeiture and forfeiture to mean waiver, the Supreme Court and most cases in our circuit have been clear: we do not review waived arguments on appeal. *Olano*, 507 U.S. at 733; *United States v. Brodie*, 507 F.3d 527, 530 (7th Cir. 2007) ("Our precedent regarding the waiver or forfeiture of rights by a criminal defendant is well-established. … Waiver of a right extinguishes any error and precludes appellate review, whereas forfeiture of a right is reviewed for plain error."). If any of our prior cases hold that

waived arguments—waived in the technical sense of the term—are subject to plain-error review, they are incorrect.

Because Waldrip waived the but-for causation argument at the district court, he extinguished any error that might have occurred, and we do not consider the merits of his argument here.

*B. Constitutional Arguments*

Waldrip also argues on appeal that § 841(b)(1)(C) is unconstitutionally vague and that his 280-month sentence violates the Eighth Amendment's proportionality requirement. Though these are different arguments than Waldrip made at the district court, the government argues only that they are forfeited. So even if Waldrip waived these arguments, the government has waived any waiver defense that it had. *Costello v. Grundon*, 651 F.3d 614, 641 (7th Cir. 2011). We thus treat the arguments as forfeited and review for plain error.

As to Waldrip's vagueness challenge to § 841(b)(1)(C), a criminal statute violates the Fifth Amendment's Due Process Clause if it is "so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement."[2] *Johnson v. United States*,

---

[2] Waldrip did not argue in his first brief that § 841(b)(1)(C) is so standardless that it invites arbitrary enforcement. At the district court, Waldrip argued that his sentence violated the Equal Protection Clause. Waldrip contended that he was charged because he was black while Wilson got a deal to cooperate because he was white. The court rejected that argument. In his reply brief, Waldrip attempted to reraise the equal-protection issue by intertwining it with a claim that the disparity in the government's treatment of him and Wilson showed that § 841(b)(1)(C) is standardless and invites arbitrary enforcement. Arguments raised for the

(continued…)

135 S. Ct. 2551, 2556 (2015). The enhanced sentence under § 841(b)(1)(C) has two elements: first, a defendant must knowingly or intentionally distribute a controlled substance, § 841(a)(1), and second, death must result from the use of that controlled substance, § 841(b)(1)(C). *Burrage*, 134 S. Ct. at 887. Waldrip argues that § 841(b)(1)(C) is unconstitutionally vague because it does not have a mens rea requirement for the enhancement's death-results element. According to Waldrip, without a knowing or intent requirement, § 841(b)(1)(C) does not put people on notice of what the penalty will be for selling a controlled substance. In Waldrip's opinion, due process is satisfied only if the defendant knows or has reason to believe that death might result from the use of the drugs sold.

Without question, the statute puts defendants on notice of what the punishment is for the knowing or intentional distribution of a controlled substance. Section 841(b)(1)(C) "puts drug dealers and users on clear notice that their sentences will be enhanced if people die from using the drugs they distribute." *United States v. Patterson*, 38 F.3d 139, 145 (4th Cir. 1994). That the statute does not have a mens rea requirement for the death-results element is of no consequence. Criminal statutes frequently punish defendants for their action's unintended consequences. "It is unusual to

---

(…continued)

first time in a reply brief are waived. *Mendez v. Perla Dental*, 646 F.3d 420, 423–24 (7th Cir. 2011). Moreover, Waldrip's claim is meritless. In a supplemental filing, the government informed us that Waldrip was offered a deal to cooperate and a fifteen-year sentence without cooperation. Waldrip rejected both offers.

impose criminal punishment for the consequences of purely accidental conduct. But it is not unusual to punish individuals for the unintended consequences of their *unlawful* acts." *Dean v. United States*, 556 U.S. 568, 575 (2009) (using the felony-murder rule as an example). Thus, § 841(b)(1)(C) is not unconstitutionally vague.

Finally, Waldrip argues that his sentence violates the Eighth Amendment's proportionality requirement. "Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Rummel v. Estelle*, 445 U.S. 263, 272 (1980). In the drug context, the Supreme Court has upheld a sentence of life in prison without the possibility of parole for a first-time offender possessing 672 grams of cocaine, *Harmelin v. Michigan*, 501 U.S. 957 (1991), and consecutive twenty-year terms for possession of marijuana with the intent to distribute, *Hutto v. Davis*, 454 U.S. 370 (1982). A 280-month sentence for selling heroin that causes death is not among the rare cases "in which comparing the gravity of the offense to the harshness of the sentence leads to an inference of gross disproportionality." *United States v. Gross*, 437 F.3d 691, 693 (7th Cir. 2006).

## III. CONCLUSION

For those reasons, Waldrip's conviction and sentence are AFFIRMED.