In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-1337

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JAIMIE PANKOW,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:16-cr-00027-jdp-2 — **James D. Peterson**, *Chief Judge.*

ARGUED DECEMBER 12, 2017 — DECIDED MARCH 12, 2018

Before BAUER, RIPPLE, and SYKES, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Jaimie Pankow pleaded guilty to con-
spiring to distribute methamphetamine, in violation of
21 U.S.C. §§ 846, 841(a)(1). The district court imposed a be-
low-guidelines sentence of 84 months' imprisonment and
5 years' supervised release. On appeal, Ms. Pankow princi-
pally contends that meaningful review of her sentence is im-
possible because the district court did not specify how much

it "departed" from the guidelines range as a result of the Government's motion under U.S.S.G. § 5K1.1. We affirm because the court was not required to specify that detail: traditional departures need not be calculated separately before the court considers other factors under 18 U.S.C. § 3553(a).

# I

## BACKGROUND

### A. Factual and Procedural Background

Ms. Pankow was involved in a large-scale drug conspiracy. She started selling methamphetamine for a friend in May 2015. Initially, she and other co-conspirators received methamphetamine from a supplier who traveled to Minnesota to purchase the drugs. After the supplier was incarcerated in November 2015, Ms. Pankow's friend drove to Minnesota to buy the methamphetamine. Ms. Pankow then started helping her friend sell it out of their house by distributing it to customers and keeping a drug ledger.

The scheme ended the next year. Ms. Pankow and the friend were returning from Minnesota in February 2016 with a purchase of methamphetamine when Wisconsin police stopped them for speeding. A K9 unit alerted officers that drugs were in the car, and officers arrested Ms. Pankow because she had six outstanding warrants for her arrest. Officers searched the car and seized methamphetamine, marijuana, a drug ledger, and a large amount of cash.

Ms. Pankow pleaded guilty to conspiring to distribute methamphetamine. The presentence report calculated a guidelines range of 108 to 135 months in prison. The parties

agreed that the Government would move under U.S.S.G. § 5K1.1 for the imposition of a sentence reflecting the substantial assistance that Ms. Pankow had provided to law enforcement. Section 5K1.1 provides that when the Government states that a defendant has provided it with substantial assistance, "the court may depart from the guidelines," but the "reduction shall be determined by the court" based on "the court's evaluation" of the assistance. U.S.S.G. § 5K1.1.

The Government filed its § 5K1.1 motion but made no specific recommendation to the court about "where to sentence Pankow" in light of the motion.[1] It simply urged the court to use 156 months as the starting point for the sentence and not to go below 120 months after considering the § 5K1.1 motion. The Government emphasized the need for relative parity with the sentences it requested for other members of the same conspiracy. Ms. Pankow argued that certain mitigating factors, including her vulnerability to men, warranted a significantly lower sentence of 59 months in prison. She arrived at that figure by starting with 96 months, subtracting 13 months for the time she had spent in state custody, and deducting 24 more months for substantial assistance.

After a brief recess, the court announced Ms. Pankow's sentence of 84 months:

> So here is what I'm going to do in terms of the sentence, trying to understand that her culpability really here is mitigated by the sway that the men had in her life and that, for all of the reasons that are laid out in the presentence report, she was vulnerable to that because of her

---

[1] R.237 at 1.

history of abuse, but I still have to recognize the substantial criminality that she had for that year. So I'm going to sentence her to 84 months. Now, there's more to it. I have got to structure it in a certain way, but sentence is 84 months.

I have considered Mr. Jones' argument about the time that she spent in incarceration already, and so that—I realize that the 84 months is actually going to start today, and so really what she ends up with is something close to the low end of her guideline sentence, you know, overall, and I do want to also recognize that she gets credit for her cooperation. I do think it was—as I look at her cooperation, I appreciate the fact that it was a substantial assistance here in this investigation, but her acceptance of responsibility did not happen immediately when she first had signs of trouble. You know, she got arrested a couple times in 2015, and she just kept at it. She had warnings of what was going on, so this isn't like a lightbulb immediately went on for her and she came in and made good and turned herself around. It was a process.

So in balancing all of those considerations, looking at what her guideline really was, I think the 84 months is the right sentence. It's sufficient but not greater than necessary to provide the punishment and opportunity for treatment. I hope that it's helpful to Ms. Pankow to have a very substantial impediment to drug use, being

incarcerated. I hope that is a productive thing
for her.[2]

Following *Setser v. United States*, 566 U.S. 231 (2012), the court decided that the sentence would run concurrently to any sentence on the three of her six pending state cases that involved conduct relevant to this case. The judge later asked the parties, "Anything else I need to address?"[3] Ms. Pankow's counsel asked the court to address two issues. First, because Ms. Pankow was in state custody, counsel asked the court to order the federal Bureau of Prisons to designate Ms. Pankow's current place of incarceration as the place where she would serve her federal sentence. Second, counsel asked the court to order that another of Ms. Pankow's state cases run concurrently with her federal sentence. The court granted the first request but denied the second because, as the court explained, that state case involved a separate offense.

Five days after sentencing, the court filed its statement of reasons for the sentence. It reiterated that Ms. Pankow's advisory guidelines range was 108 to 135 months. The court also stated that it would "further grant the government's motion pursuant to § 5K1.1."[4] The court detailed Ms. Pankow's characteristics and explained that she deserved a lower sentence than the 120-month floor advocated by the Government; 84 months in prison was appropriate under the factors in 18 U.S.C. § 3553(a).

---

[2] R.254 at 46–48.

[3] *Id.* at 58.

[4] R.248 at 5.

## II

## DISCUSSION

On appeal, Ms. Pankow argues that the district court procedurally erred in two ways: First, it did not rule on the Government's § 5K1.1 motion at sentencing. Second, it did not describe adequately how Ms. Pankow's substantial assistance and other factors affected her sentence. The Government replies that Ms. Pankow waived her procedural challenges by not raising them at sentencing. Waiver to the side, the Government further contends that the district court did not procedurally err; the court ruled on the § 5K1.1 motion and adequately explained how it arrived at Ms. Pankow's sentence.

We begin with the Government's waiver argument. Waiver precludes appellate review. *See United States v. Butler*, 777 F.3d 382, 386–87 (7th Cir. 2015). If, however, Ms. Pankow merely forfeited her arguments, we review for plain error. *See United States v. Jenkins*, 772 F.3d 1092, 1096 (7th Cir. 2014). Waiver occurs when a defendant intends, as a strategic matter, to relinquish a known right. *See United States v. Barnes*, No. 17-2574, -- F.3d --, 2018 WL 1095950, at *2 (7th Cir. Mar. 1, 2018); *United States v. Waldrip*, 859 F.3d 446, 449 (7th Cir. 2017). By contrast, a defendant forfeits an argument when she merely fails to assert a right in a timely fashion because of accident or neglect. *See United States v. Burns*, 843 F.3d 679, 685 (7th Cir. 2016). We construe waiver principles liberally in favor of the defendant. *See Butler*, 777 F.3d at 387.

We believe that Ms. Pankow forfeited, rather than waived, her procedural challenges. First, we can discern no strategic reason for Ms. Pankow to forego asking the court to clarify

how it arrived at her below-guidelines sentence. To the contrary, by failing to ask the court for clarification, Ms. Pankow created uncertainty about whether the court had granted the Government's § 5K1.1 motion at the hearing, and that uncertainty was not in her strategic interest. There does not appear to be any reason for her failure to ask for clarification of the § 5K1.1 motion other than negligence. For instance, she was not hesitant to question the judge about his sentencing methodology. Indeed, she did ask the court to reconsider its ruling that one of her potential state sentences would not run concurrently to her federal sentence. Because Ms. Pankow merely forfeited the challenges before us, we review her sentence for plain error. Accordingly, we will reverse the district court only if it committed a clear or obvious error that affected her substantial rights and that impugns the fairness, integrity, or public reputation of the proceedings. *See United States v. Olano*, 507 U.S. 725, 732–37 (1993); *United States v. Gill*, 824 F.3d 653, 661 (7th Cir. 2016).

Ms. Pankow first contends that the court did not rule on the Government's § 5K1.1 motion at sentencing as required by Federal Rule of Criminal Procedure 32(i)(3)(B). We cannot accept this contention. At the sentencing hearing, the court effectively ruled on the § 5K1.1 motion by saying that "she gets credit for her cooperation."[5] In addition to the court's remarks at sentencing, we also look to the written statement of reasons to evaluate the sufficiency of the sentencing rationale. *See United States v. Blackman*, 830 F.3d 721, 728 (7th Cir. 2016). Here, the court wrote in the statement of reasons that it would

---

[5] R.254 at 47.

"further grant the government's motion pursuant to § 5K1.1."[6] Thus, no error, much less plain error, occurred.

Ms. Pankow next argues that the sentencing court did not adequately explain its reasons for sentencing her to 84 months' imprisonment. She contends that the court (1) failed to specify the amount of credit given to her substantial assistance, (2) conflated the inquiry into her substantial assistance with her acceptance of responsibility, and (3) did not state whether she received credit for her 13 months in state custody. The Government responds that the court did not need to specify the credit Ms. Pankow received for her assistance because "departures" are obsolete after *United States v. Booker*, 543 U.S. 220 (2005). The Government also maintains that the court did not confuse substantial assistance with acceptance of responsibility and, indeed, addressed specifically whether Ms. Pankow should receive credit for her time spent in state custody.

Beginning with the last of these arguments, we cannot accept the assertion that the court ignored Ms. Pankow's request for 13 months of credit for her time in state custody. The district court was required to address Ms. Pankow's arguments at sentencing, *see Rita v. United States*, 551 U.S. 338, 356 (2007), and did so. The court stated that it had "considered" Ms. Pankow's "time that she spent in incarceration already" and that Ms. Pankow's total prison time would be "close to the low end" of her guidelines range.[7] Thus, Ms. Pankow received a discretionary reduction for her time in state custody. *See United States v. Cunningham*, 429 F.3d 673, 679 (7th Cir.

---

[6] R.248 at 5.

[7] R.254 at 47.

2005). Moreover, as the Government points out, the court was not required to give Ms. Pankow *any* credit for her time in state custody because she was being held awaiting state trial, not because of a conviction. *See* U.S.S.G. § 5G1.3.

Ms. Pankow also argues that the district court procedurally erred in failing to specify the extent to which her sentence was reduced for her substantial assistance. Although the court acknowledged that it was giving her credit for cooperation, it did not specify the amount of time taken off her sentence as a result. Rather, the court announced her final sentence of 84 months and then discussed the various factors that led to that sentence, including her substantial assistance. This approach, she claims, wrongfully conflated the § 5K1.1 departure with any variances granted under § 3553(a).[8]

Ms. Pankow primarily relies on § 1B1.1 of the Sentencing Guidelines, which instructs courts to follow a three-step process when applying the Guidelines:

---

[8] Although the formal distinction between departures and variances has lost much of its analytical significance since *United States v. Booker*, 543 U.S. 220 (2005), courts have continued to use those labels as terms of art based on their distinct meanings from when the Guidelines were mandatory. *See Irizarry v. United States*, 553 U.S. 708, 714 (2007) ("'Departure' is a term of art under the Guidelines and refers only to non-Guidelines sentences imposed under the framework set out in the Guidelines."); *id.* at 718 (Breyer, J., dissenting) ("And conceptually speaking, the substantive difference between a 'variance' and a 'departure' is nonexistent … ."); *United States v. Walker*, 447 F.3d 999, 1005–06 (7th Cir. 2006) (discussing pre- and post-*Booker* understandings of "departures").

§1B1.1. Application Instructions

> (a) The court shall determine the kinds of sentence and the guideline range as set forth in the guidelines (*see* 18 U.S.C. § 3553(a)(4)) by applying the provisions of this manual … .
>
> (b) The court shall then consider Parts H and K of Chapter Five, Specific Offender Characteristics and Departures, and any other policy statements or commentary in the guidelines that might warrant consideration in imposing sentence. *See* 18 U.S.C. § 3553(a)(5).
>
> (c) The court shall then consider the applicable factors in 18 U.S.C. § 3553(a) taken as a whole. *See* 18 U.S.C. § 3553(a).

U.S.S.G. § 1B1.1. This approach was adopted by the Sentencing Commission by way of Amendment 741, effective November 1, 2010. U.S.S.G. App. C, Vol. III, Amend. 741. With this amendment, the Commission intended to resolve what it considered a circuit split regarding the proper application of the Guidelines after they became advisory in *Booker*.[9] Under

---

[9] Following *Booker*, our circuit has treated departures as legally "obsolete" because sentencing courts no longer have to rely on the formal departure provisions of the Guidelines. *See, e.g., United States v. Johnson*, 427 F.3d 423, 426 (7th Cir. 2006); *see also United States v. Mohamed*, 459 F.3d 979, 986 (9th Cir. 2006) ("We think the better view is to treat the scheme of downward

§ 1B1.1, a sentencing court, after calculating the applicable guidelines range, should first consider the traditional departures addressed in the Guidelines before it considers any other sentencing considerations not tied explicitly to the guideline structure. *See United States v. Guyton*, 636 F.3d 316, 319 n.2 (7th Cir. 2011). In order to understand how this provision should operate in a post-*Booker* world, we must review the relevant Supreme Court pronouncements during this era.

Since *Booker*, the Supreme Court has clarified the role that the advisory Guidelines play in sentencing procedures. "First, a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. … [T]he Guidelines should be the starting point and the initial benchmark. The district court must then consider the arguments of the parties and the factors set forth in § 3553(a)." *Peugh v.*

---

and upward 'departures' as essentially replaced by the requirement that judges impose a 'reasonable' sentence."). At the time of Amendment 741, many other circuits followed a more structured three-step process, under which they continued to account for traditional departures *before* considering other § 3553(a) factors. *See, e.g.*, *United States v. Moreland*, 437 F.3d 424, 433 (4th Cir. 2006) ("We believe … that so-called 'traditional departures' remain an important part of sentencing even after *Booker*."), *abrogated in part as stated in United States v. Foote*, 784 F.3d 931, 941–42 (4th Cir. 2015); *United States v. Hawk Wing*, 433 F.3d 622, 631 (8th Cir. 2006) (holding that district courts should "follow a three-step sentencing approach," under which they "determine the appropriate guidelines … range" and then "decide if a 'traditional departure' is appropriate" before considering "all other factors in § 3553(a)"), *abrogated on other grounds by Tapia v. United States*, 564 U.S. 319 (2011); *United States v. Jordi*, 418 F.3d 1212, 1215 (11th Cir. 2005) (referencing U.S.S.G. § 1B1.1 and noting that "the application of the guidelines is not complete until the departures, if any, that are warranted are appropriately considered").

*United States*, 133 S. Ct. 2072, 2080 (2013) (citation omitted) (internal quotation marks omitted). When determining a sentence, the court "must make an individualized assessment based on the facts presented. If [it] decides that an outside-Guidelines sentence is warranted, [it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall v. United States*, 552 U.S. 38, 50 (2007). Finally, "[a]fter settling on the appropriate sentence, [the court] must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Id.* Some examples of significant procedural error are failure to calculate correctly the guidelines range, to consider the § 3553(a) factors, or to explain adequately the chosen sentence. *Id.* at 51.

Although courts must correctly calculate the applicable guidelines range before considering the pertinent § 3553(a) factors, the Guidelines are otherwise advisory and cannot mandate a strict decision-making sequence.[10] As we said in *United States v. Brown*, "the district court's obligation is simply

---

[10] Notably, in light of the Supreme Court's sentencing cases since *Booker*, some of our sister circuits have reached this same conclusion, departing from their earlier positions. *See United States v. Armenta-Mendoza*, 648 F. App'x 902, 904 (11th Cir. 2016) (per curiam) (unpublished) (rejecting argument that "a sentencing court must first go through a departure analysis before considering whether to vary on that particular ground"); *United States v. Diosdado-Star*, 630 F.3d 359, 364–66 (4th Cir. 2011) (noting that post-*Booker* Supreme Court cases implicitly overruled the Fourth Circuit's prior holding in *Moreland*, 437 F.3d 424, that sentencing courts must consider traditional departures before varying from a Guidelines-based sentence).

to calculate the guidelines range correctly and arrive at a reasonable sentence after weighing the sentencing factors in § 3553(a), varying upward or downward from the guidelines range in its discretion." 732 F.3d 781, 786 (7th Cir. 2013). Accordingly, we have held that the *calculation* of traditional "departures" is no longer required. *See United States v. Maxfield*, 812 F.3d 1127, 1129–30 (7th Cir. 2016); *Brown*, 732 F.3d at 786. Nevertheless, we have emphasized that "district courts can still take guidance from the departure provisions … and apply them by way of analogy when assessing the § 3553(a) factors. But the only boundaries on the court's *Booker* discretion are the more capacious § 3553(a) factors." *Brown*, 732 F.3d at 786 (citation omitted) (internal quotation marks omitted). "[A]fter *Booker* what is at stake is the reasonableness of the sentence, not the correctness of the 'departures' as measured against pre-*Booker* decisions that cabined the discretion of sentencing courts to depart from guidelines that were then mandatory." *United States v. Johnson*, 427 F.3d 423, 426 (7th Cir. 2005).

We never have said, however, that the considerations formerly denominated "departures" or "offense characteristics" are irrelevant to the sentencing process. Indeed, 18 U.S.C. § 3553(a) contemplates that the district court will give them conscientious consideration. Similarly, the three-pronged procedure set forth in § 1B1.1, while not strictly mandatory, should be given respectful consideration by a sentencing court. These steps supply a helpful framework designed to ensure that the district court does not omit from its consideration any factor mandated by § 3553(a). Furthermore, adherence to § 1B1.1 facilitates consistency in sentencing and permits appellate courts to follow the sentencing court's reasoning in imposing a particular sentence.

A sentencing court is under no *duty*, however, to follow rigidly the § 1B1.1 construct. The sentencing court's only *duty* is to calculate the correct guidelines range, consider in the context of § 3553(a) the factors the parties have set before it, and respond to those considerations in a meaningful manner. If the Government has grounded its request in a formal departure motion, the record must reflect the court's careful consideration of that request. The court also must give meaningful consideration to other pertinent § 3553(a) factors unrelated to the Government's request. But, as the very words of § 1B1.1(b) make clear, it need not *calculate*, only "consider," a separate reduction based on traditional departures before considering other § 3553(a) factors.

In Ms. Pankow's case, the district court correctly calculated the guidelines range and, although not following the structure of § 1B1.1, adequately considered the parties' arguments, including the Government's § 5K1.1 motion and the pertinent § 3553(a) factors. The court considered Ms. Pankow's substantial assistance, her time spent in state custody, her individual history and characteristics, the seriousness of her offense, her acceptance of responsibility, the need for sentencing parity, and the need to protect the public.

If the court had explained its reasoning in the more structured manner of § 1.1B1, there would have been no room for the present controversy. Nevertheless, we believe the record adequately reflects that the district court considered Ms. Pankow's assistance and all other mitigating factors. There was no plain error.

Ms. Pankow's final argument is that the court impermissibly conflated the inquiries into her substantial assistance and her acceptance of responsibility. Again, we see no plain error.

The court referred to both substantial assistance and acceptance of responsibility as "cooperation" and considered properly the timeliness of Ms. Pankow's assistance under § 5K1.1(a). As reflected in the statement of reasons, Ms. Pankow received a downward adjustment in the guidelines range for her acceptance of responsibility, and, after that range was calculated, she earned a further sentence reduction on account of her substantial assistance. This record simply does not demonstrate plain error. Accordingly, the judgment of the district court is affirmed.

AFFIRMED