LYNN ADELMAN, District Judge
Defendant Moin Gohil acted a "runner" for an impersonation scheme based in India in which co-actors located outside the United States called people inside this country, falsely represented that they owed taxes or other debts, and induced them to wire money to locations directed by the callers, from which defendant and the other runners would retrieve the proceeds. Over a 16 month period, defendant picked up $388,633.08 from 407 victims.
Indicted with several other runners, defendant pleaded guilty to wire fraud charges, and I set the case for sentencing. In imposing sentence, the district court must first correctly calculate the advisory sentencing guideline range, then consider the arguments of the parties and *938 the factors set forth in 18 U.S.C. § 3553(a), making an individualized assessment based on the facts presented. After settling on the appropriate sentence, the court must adequately explain the chosen sentence to promote the perception of fair sentencing. United States v. Pankow, 884 F.3d 785, 793 (7th Cir. 2018).
I. GUIDELINE CALCULATION
Defendant's pre-sentence report ("PSR") set a base offense level of 7, U.S.S.G. § 2B1.1(a)(1), then added 12 levels based on a loss amount between $250,000 and $550,000, § 2B1.1(b)(1), 2 levels because the offense involved more than 10 victims, § 2B1.1(b)(2)(A), and 2 levels because a substantial part of the scheme was committed from outside the United States, § 2B1.1(b)(10). The PSR subtracted 3 levels for acceptance of responsibility, U.S.S.G. § 3E1.1, based on defendant's timely guilty plea, producing a final offense level of 16. As he had no prior record, the PSR set defendant's criminal history category at I, producing an imprisonment range of 33-41 months. I adopted these calculations without objection.
II. SECTION 3553(a)
A. Sentencing Factors
Section 3553(a) directs the sentencing court to consider:
(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed-
(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the [advisory sentencing guideline range;]
(5) any pertinent policy statement ... issued by the Sentencing Commission[;]
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.
18 U.S.C. § 3553(a).
After considering these factors, the court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing: just punishment, deterrence, protection of the public, and provision of needed correctional treatment. Id. While the court must as part of its analysis consider the sentence recommended by the guidelines, the court retains discretion "to select an appropriate sentence for the individual defendant and the surrounding circumstances." United States v. Musgraves, 883 F.3d 709, 715 (7th Cir. 2018). "The sentencing judge may not perfunctorily impose a guidelines sentence or even presume that such a sentence is appropriate in a given case." United States v. Warner, 792 F.3d 847, 855 (7th Cir. 2015).
B. Analysis
1. The Offense
The defendants charged in this case used fraudulent identifications to pick up the proceeds for a fraud scheme originating in India. From at least June 1, 2016 until October 12, 2017, defendant used at *939 least 26 different fraudulent identities to personally pick up at least $388,633.08 in 505 different transactions from 407 victims.
In his statement to the PSR writer, defendant indicated that he did not know he was breaking the law when he first became involved. Here on a student Visa from India, he was experiencing financial struggles as he could not obtain a job due to his legal status. A friend in India connected him with a person in Atlanta, Georgia who was "making a lot of money." Although defendant came to realize what he was doing was wrong, he continued his involvement to support himself. He indicated that he regrets his involvement and his bad choices, and feels remorseful for the victims.
2. The Defendant
Defendant was 23 years old, with no prior record. He came to the United States from India in 2015 to study computer science, first in Tennessee, then Georgia. Given his status, he was subject to deportation on completion of his sentence in this case. He did not appear to have any mental health, substance abuse, or other correctional treatment needs.
3. The Sentence
The guidelines called for a term of 33-41 months in prison, and I agreed that a period of confinement was needed to provide just punishment for the offense, which preyed on vulnerable victims and caused significant financial losses, in addition to emotional consequences for the victims. The victim impact statements made clear how serious these schemes are and how much harm they cause. Prison was also needed to deter others from involvement in these kinds of schemes.
I did take into account the specific role occupied by the defendants in this case. They acted as runners or couriers, picking up proceeds, which they forwarded to others. They did not devise the scheme or make the fraudulent representations to the victims, and it appeared their share of the proceeds was relatively small, at least in comparison to the overall loss. I also considered the financial problems that prompted defendant's involvement. I further found it appropriate to note that defendant had been confined for about 9 months in local jails, which is harder time than that spent in a federal prison facility. These factors suggested that a term below the range would suffice to provide just punishment given defendant's specific conduct and circumstances.
Regarding the need to protect the public, I noted that defendant had no prior record and would likely be deported when he finished his sentence. Lengthy prison was not needed to satisfy this purpose of sentencing. A term below the range also sufficed to deter defendant, as he had never served time before. Ordinarily, a lesser period of imprisonment will suffice to deter a defendant not previously subject to lengthy incarceration, as opposed to a defendant who has already served serious time yet continues to re-offend. See United States v. Qualls, 373 F.Supp.2d 873, 877 (E.D. Wis. 2005).
Finally, I took into account the time-served sentences I imposed on two co-defendants who occupied similar roles in the scheme. The government argued that defendant should receive a longer sentence as he played a more significant role, collecting more money from more victims than they did. The government[1] further *940 noted that defendant recruited others to act as runners and that, unlike the first co-defendant I sentenced, defendant did not attempt to cooperate or suffer from serious health issues.
Defendant admitted that he was involved for a longer time and that he recruited one of the co-defendants. Overall, however, the defendants were more alike than different: all worked at the behest of others, who actually devised the scheme, made the misrepresentations, and took most of the profits; all pleaded guilty and admitted their crimes; none had prior records; and all faced deportation. I concluded that the differences noted by the government were sufficiently accounted for by the fact that defendant spent more time in custody than the others, such that a time served sentence was not actually the same thing.[2]
Under all the circumstances, I found a sentence of time served sufficient but not greater than necessary to satisfy the purposes of sentencing here. This sentence was based on § 3553(a) and would have been the same regardless of the guidelines.
III. CONCLUSION
I therefore committed defendant to the custody of the Bureau of Prisons for a period of time served. I imposed no supervised release, consistent with the recommendation in U.S.S.G. § 5D1.1(c), but I did require defendant to make restitution in the amount of $388,633.08 to the victims.

One of the co-defendants collected about $250,000 from 232 victims, the other about $140,000 from 139 victims.

The co-defendants served about 6 and 8 months, respectively, with the man who cooperated serving the shorter term.