LYNN ADELMAN, District Judge
Defendant Brandon Graham pleaded guilty to conspiracy to distribute more than 500 grams of cocaine, and I set the case for sentencing. In imposing sentence, the district court must first correctly calculate the advisory sentencing guideline range, then consider the factors set forth in 18 U.S.C. § 3553(a), making an individualized assessment based on the facts presented. After settling on the appropriate sentence, the court must adequately explain the chosen sentence to promote the perception of fair sentencing. United States v. Pankow, 884 F.3d 785, 793 (7th Cir. 2018).
I. GUIDELINE CALCULATIONS
Defendant's pre-sentence report ("PSR") set a base offense level of 26 based on a drug weight of two+ kilograms of cocaine, U.S.S.G. § 2D1.1(c)(7), then subtracted 2 levels because defendant qualified for the safety valve, U.S.S.G. § 2D1.1(b)(17), and 3 levels for acceptance of responsibility, U.S.S.G. § 3E1.1, for a final level of 21. Coupled with defendant's criminal history category of I, this produced an imprisonment range of 37-46 months. I adopted these calculations without objection.
II. SECTION 3553(a)
A. Sentencing Factors
Section 3553(a) directs the sentencing court to consider:
*971 (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed-
(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the [advisory sentencing guideline range;]
(5) any pertinent policy statement ... issued by the Sentencing Commission[;]
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.
18 U.S.C. § 3553(a).
After considering these factors, the court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing: just punishment, deterrence, protection of the public, and provision of needed correctional treatment. Id. While the court must as part of its analysis consider the sentence recommended by the guidelines, the court retains discretion "to select an appropriate sentence for the individual defendant and the surrounding circumstances." United States v. Musgraves, 883 F.3d 709, 715 (7th Cir. 2018). "The sentencing judge may not perfunctorily impose a guidelines sentence or even presume that such a sentence is appropriate in a given case." United States v. Warner, 792 F.3d 847, 855 (7th Cir. 2015).
B. Analysis
1. The Offense
The government initiated an investigation into the drug trafficking activities of two related street gangs, known as the "HPT" and "ATK" gangs. The gang members pooled their money to obtain large quantities of cocaine from a source in Rockford, Illinois. One of the ATK members, Deron Gilbert, typically traveled to Rockford to pick up the drugs. According to several informants, defendant Graham obtained cocaine from Gilbert for distribution. The parties agreed that defendant was responsible for at least two kilograms of cocaine because this amount was reasonably foreseeable to him based on the jointly undertaken criminal activity.
Defendant admitted involvement in the conspiracy for several years, indicating that his role was primarily that of a middle man; people would contact him for drugs and he would contact one of his co-defendants, who would provide them. This explanation was consistent with the results of a May 14, 2014, controlled buy, in which one of the informants arranged a cocaine transaction with defendant, who directed the informant to call and meet with Gilbert, who later provided the cocaine. Defendant stated that he stopped his involvement before his arrest in this case and saw his involvement as a means to an end; his mother was sick, and he used the money he earned to support his family.
2. The Defendant
Defendant was 29 years old, with a prior record limited to a 2012 cocaine possession case. Defendant reported a good childhood, and the PSR confirmed that he graduated *972 from high school in 2007. He nevertheless appeared to lack direction for several years, failing to maintain steady employment after a stint at Wal-Mart in 2006 and 2007. He admitted regular use of marijuana prior to his arrest in this case.
However, defendant did seem to be doing much better in recent years. Following a few positives early on bond in this case, he was able to stop the marijuana use and otherwise complied with pre-trial release. He obtained a full-time job as a laborer with the City of Milwaukee. After that job ended due to budget cuts, he briefly worked for a temporary service before obtaining another full-time job with a roofing and construction company, regularly working overtime hours. Based on this conduct and his statements at sentencing, it appeared that defendant now seemed to understand and appreciate the value of a hard day's work, rather than looking to make fast money. He reported having joint custody of his two children and maintained a good relationship with their mothers. He also expressed a desire to further his education.
3. The Sentence
The guidelines called for a term of 37-46 months, and given the substantial amount of cocaine involved in the case there was an argument for confinement. However, it appeared that defendant's involvement in the conspiracy was lower level and, at times at least, that of a middle man. It was also significant that he decided to remove himself from this life prior to indictment. Voluntary withdrawal is a significant mitigating factor for a sentencing court. See Gall v. United States, 552 U.S. 38, 56-57, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007). I also found significant defendant's post-offense rehabilitative efforts. A court should be reluctant to remove from the community someone who is now productive and doing the things we want people to do: work, pay taxes, and support their families. Finally, I took into account defendant's limited prior record, which suggested that a prison term was not needed to protect the public.
III. CONCLUSION
Although defendant qualified for the safety valve, which released the otherwise applicable 5-year minimum, 21 U.S.C. § 841(b)(1)(B) forbid a probationary sentence. I accordingly imposed a sentence of time served, based on the time he spent in custody between arrest and release on bond, followed by a three year term of supervised release. As conditions, I required defendant to continue supporting his dependents, avoid places where controlled substances are sold or used, and comply with a drug testing and treatment program.