In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-1356

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JULIAN THOMAS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 16-CR-00044-wmc-1 — **William M. Conley**, *Judge.*

ARGUED MARCH 27, 2019 — DECIDED AUGUST 1, 2019

No. 18-1519

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JAMES THOMPSON,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 16-CR-00044-wmc-2 — **William M. Conley**, *Judge*.

————————————

SUBMITTED MARCH 27, 2019 — DECIDED AUGUST 1, 2019

————————————

Before EASTERBROOK, KANNE, and HAMILTON, *Circuit Judges*.

HAMILTON, *Circuit Judge*. A federal grand jury indicted defendants Julian Thomas and James Thompson for robbing a bank. Count One charged them with armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d). Count Two charged them with using and carrying a firearm by brandishing it during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c). A joint trial was scheduled but then delayed — first at Thomas's request, and then again because Thompson's counsel faced an irreconcilable conflict of interest because of a newly discovered witness for the government. Shortly before the delayed trial, however, Thompson pleaded guilty and agreed to testify for the government against Thomas. Thomas went to trial. The jury found him guilty on both counts and also returned a special verdict finding that Thomas aided Thompson's brandishing of a firearm in the bank robbery. The district court sentenced Thomas to thirteen years in prison for the bank robbery and a consecutive seven years (the statutory minimum) for aiding and abetting Thompson's brandishing.

Both defendants have appealed, but Thompson's attorney has filed an *Anders* brief explaining that he does not believe Thompson has any viable arguments on appeal. We agree and

dismiss that appeal, No. 18-1519.[1] Thomas contends on appeal that certain evidence and argument at his trial were improper, that the delay between his indictment and his trial violated the Speedy Trial Clause of the Sixth Amendment, and that the jury instructions for 18 U.S.C. § 924(c) were erroneous. Thomas failed to raise all but one of these issues in the district court. We affirm his convictions and sentence in No. 18-1356.

I.  *Factual & Procedural Background*

Thomas and Thompson were convicted of robbing the Peoples Community Bank in Plain, a small town in Sauk County, Wisconsin. The evidence at Thomas's trial showed that he had been planning a bank robbery for some time. Thompson so testified, and he explained that Thomas had told him they would enter the bank and Thompson would monitor the bank's tellers while Thomas would enter the vault with the bank's manager. They would then escape with a white female getaway driver.[2]

---

[1] Thompson does not challenge the validity of his guilty plea, which allowed him to avoid a mandatory life sentence. He was sentenced to ten years for the bank robbery and a consecutive seven years for brandishing the firearm. Neither his counsel nor we see any arguable procedural or substantive error in the sentence. Thompson received his counsel's *Anders* brief and submitted no response identifying any issues he wished to pursue on appeal, as he could have under Circuit Rule 51(b).

[2] Robert Lynn, who was in the Dane County Jail with Thomas in March 2014, testified that Thomas had told him he planned to rob a bank in Plain by "pistol-whip[ping] some old ladies" to "keep the first responders busy." James Britton testified that as early as 2012 or 2013, Thomas had talked of his plan to rob a bank in a small town. Britton also testified that Thomas had solicited his help to find an accomplice and that Britton had connected Thomas with Thompson and received some of the robbery proceeds.

That is what actually happened. On the day of the robbery, Thomas and Beth Manbauman (who was being paid in heroin) picked Thompson up at a bus stop. Thomas provided Thompson with a mask and loaded handgun. Thompson put the gun in his pocket. As Thompson and Thomas waited in an alley outside the bank, Thompson removed the handgun from his pocket. The two then ran into the bank. Both wore masks. Thompson pointed the gun at the bank's tellers. Thompson got two tellers to empty their cash drawers while Thomas forced the bank's manager to open the vault. They fled with approximately $60,000 in a car driven by Manbauman.

The government introduced evidence showing that on the day of the robbery, both Thompson and Manbauman had communicated with a particular telephone number. The number was registered to "Frank Smith" in Irvine, California, but Thompson testified that the number was listed in his telephone as belonging to "Juice," which was Thomas's nickname. Other witnesses testified that Thomas went by the nickname "Juice." The government was aware that Thomas would try to impeach Thompson's credibility, so the government called Thomas's probation officer, Michael Ellestad, who testified that he had used that same telephone number to contact Thomas while supervising him between November 2014 and June 2015.

The government also introduced evidence that Thomas had a friend register as the straw owner of a used Mercedes Benz automobile that he bought days after the robbery. Before trial, the court ruled that the government could introduce a recording of a telephone call Thomas made while in pretrial detention in which he said the car was worth $30,000. The lead

case detective testified on cross-examination by the defense that he had listened to that telephone call.

Thomas did not call any witnesses but introduced three exhibits. The defense theory was that James Britton, not Thomas, committed the robbery with Thompson. During closing arguments, according to Thomas, the prosecutor misled the jury by repeatedly using the word "you" while explaining the reasonable-person standard for "intimidation" under 18 U.S.C. § 2113(a). Without an objection from Thomas, the district court corrected the government in front of the jury, explaining that the inquiry is an objective one.

The district court instructed the jury on the elements of the two counts against Thomas. Only the instructions for the firearm charge in Count Two are at issue in this appeal. The court instructed that a verdict of guilty on an aiding-and-abetting theory of liability required proof beyond a reasonable doubt that Thomas "knew before the bank robbery that James Thompson was going to use, carry, or brandish a firearm during and in relation to the bank robbery charged in Count 1," and that "[o]nce [Thomas] knew this, he intentionally facilitated" it. The court instructed the jurors that a guilty verdict would require that they "agree on at least one of these three ways"—using, carrying, or brandishing—"that James Thompson employed the firearm during the bank robbery." The court included a special verdict form asking whether Thomas aided Thompson's brandishing of a firearm, explaining: "The reason you're being asked this question is to make certain that even if you found someone guilty of Count 2 … you all agree brandishing occurred." This finding was necessary to apply the statutory enhancement for brandishing. See 18 U.S.C. § 924(c)(1)(A)(ii). When the jury asked a question

while deliberating, the court told them that "aid," "aids," or "aiding" have their ordinary meanings.

The jury found Thomas guilty of both counts and answered yes to the special verdict question on brandishing. The district court sentenced Thomas to thirteen years in prison for the bank robbery charge and a consecutive sentence of seven years (the statutory minimum) for aiding and abetting Thompson's brandishing of the firearm.

II. *Discussion*

Thomas raises five issues on appeal. Three relate to evidence and argument at trial: (A) the admission of Thomas's probation officer's testimony that he used a particular telephone number to contact Thomas; (B) the admission of the telephone call Thomas made while in pretrial detention saying that he purchased a car worth $30,000 after the bank robbery; and (C) the government's use of the word "you" instead of "reasonable person" in its closing argument to describe the inquiry for intimidation. The other two issues are (D) the Speedy Trial Clause claim and (E) a challenge to the jury instructions for accomplice liability for brandishing a firearm during and in relation to a crime of violence.

When a defendant has objected to the admission of evidence, we review the district court's decision for an abuse of discretion. *United States v. Quiroz*, 874 F.3d 562, 569 (7th Cir. 2017); *United States v. Gorman*, 613 F.3d 711, 717 (7th Cir. 2010). We generally review the legal accuracy of jury instructions *de novo*, while deferring to a district court's discretion in the specific phrasing. See *United States v. McClellan*, 794 F.3d 743, 753 (7th Cir. 2015). But when a defendant fails to object to a potential evidentiary error or jury instruction in the district

court, these forfeited objections are reviewed only for plain error. See *United States v. Ambrose*, 668 F.3d 943, 963 (7th Cir. 2012) (evidence); *United States v. Lawson*, 810 F.3d 1032, 1040 (7th Cir. 2016) (jury instructions); Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."). On plain-error review, we may reverse if: (1) an error occurred, (2) the error was plain, (3) it affected the defendant's substantial rights, and (4) it seriously affected the fairness, integrity, or public reputation of the proceedings. *United States v. Olano*, 507 U.S. 725, 732–38 (1993); *United States v. Pierson*, 925 F.3d 913, 919 (7th Cir. 2019). In the district court, Thomas objected only to the admission of the telephone call discussing the $30,000 car, so we review the district court's decision to admit it under an abuse of discretion standard. We review all other issues only for plain error.

A. *Testimony of the Probation Officer*

The government called Thomas's probation officer to testify that he used a specific telephone number to contact Thomas in supervising him on probation. The Federal Rules of Evidence sharply restrict admission of an accused defendant's prior convictions. E.g., Fed. R. Evid. 404, 609. The restrictions are designed to ensure that a defendant is convicted based on the evidence relevant to the charged offenses, not a supposed propensity to commit crimes based on evidence of prior convictions. See *United States v. Gomez*, 763 F.3d 845, 855–56 (7th Cir. 2014) (en banc); *United States v. Beck*, 625 F.3d 410, 416 (7th Cir. 2010). We have repeatedly cautioned trial courts to consider carefully the introduction of previous convictions. See, e.g., *Beck*, 625 F.3d at 416, citing *United States v. Taylor*, 522 F.3d 731, 732–33 (7th Cir. 2008).

In this case, there was not an explicit statement that Thomas was previously convicted of a crime, but we assume jurors would understand that a person on probation has previously been convicted of a crime. The testimony of Officer Ellestad that he used the telephone number to contact Thomas could establish Thomas's identity and connection to the telephone number, which is a permissible purpose under Rule 404(b). Yet, in response to a proper objection, the district court would still need to weigh its probative value against the risk of unfair prejudice under Rules 403 and 404(b). *Taylor*, 522 F.3d at 732–33.

Without an objection, the district court did not plainly err in admitting Officer Ellestad's testimony. The testimony was relevant to show that the telephone number belonged to Thomas and that he used the number to coordinate with Thompson and Manbauman. Thomas disputed his involvement in the planning and execution of the robbery. He also disputed Thompson's testimony explaining that he communicated with Thomas using that telephone number. The corroborating testimony of Thomas's probation officer—including his job title, which established that he clearly knew how to get in touch with Thomas—had significant probative value.

When a defendant objects to evidence that will put the fact of a prior conviction before the jury, the trial judge should consider whether other evidence might serve the same purpose and should weigh probative value against the risk of unfair prejudice. See *United States v. Loughry*, 660 F.3d 965, 974 (7th Cir. 2011) ("availability of other means of proof is an appropriate factor to consider in determining the relevance of an item of evidence"), citing *Old Chief v. United States*, 519 U.S. 172, 182–84 (1997). If Thomas had been willing to stipulate

that the telephone number was his, there would have been no reason to introduce his probation officer's testimony. But Thomas disputed whether the number belonged to him. That was his right, of course, but the government was entitled to offer evidence to corroborate Thompson's testimony tying Thomas to the telephone number.

Also, the risk of unfair prejudice here was reduced. The jury was already aware through other, proper evidence that Thomas had a criminal history. The defense itself referred to Thomas's criminal history multiple times. The defense noted Thomas's prior incarceration with government witness Robert Lynn in its opening statement. See Trial Tr. I-120 ("You'll also hear that Detective Sabol finds out a couple months after the robbery that Mr. Thomas was in jail with a guy named Robert Lynn. … They were in jail together the spring before."). Thomas did not object to the introduction of Lynn's testimony later in the trial. The defense's opening statement also acknowledged:

> During this trial you will learn that Mr. Thomas is not a squeaky clean guy. We are not going to try to pretend he's something he's not. He hangs out with unsavory characters. Sometimes he sells drugs to get by. Sometimes he steals credit cards, forgery, makes his money that way, stuff like that.

In closing argument, the defense reiterated:

> I know that Mr. Thomas is not a great guy. … That's not what makes him guilty of robbery. Because those other bad acts, that evidence that, like, "Hey, man, you're with some unsavory

folks. You're a heroin dealer. You know, you're the kind of guy that steals iPads and does credit card fraud. You are a despicable human being"—if the charge was you're a despicable human being, go for it, guilty, guilty, but it's not.

Given these references from the defense, Officer Ellestad's reference to being Thomas's probation officer was not unfairly prejudicial and did not outweigh the probative value of his testimony. See Fed. R. Evid. 403. Thomas's criminal past "was already before the jury," and the likelihood that this aspect of Officer Ellestad's testimony "had any effect on the jury is negligible." *United States v. Courtright*, 632 F.3d 363, 370 (7th Cir. 2011). We doubt there was any error, and there certainly was no plain error, in admitting this testimony.

B.  *The $30,000 Car Telephone Call*

Before trial, the government informed the court that it would offer a recording of a telephone call Thomas made while in pretrial detention in which he said that a Mercedes Benz he bought shortly after the robbery was worth $30,000. Thomas objected to this evidence, so we review the court's decision to admit it for an abuse of discretion. *United States v. Cunningham*, 462 F.3d 708, 712 (7th Cir. 2006). While this is not the plain-error standard, this standard is still deferential. *United States v. Ozuna*, 561 F.3d 728, 738 (7th Cir. 2009).

This issue has become a bit muddled factually. Shortly before oral argument on appeal, the government filed a letter explaining that the portion of this telephone call referring to the supposed $30,000 value of the car was "unintentionally deleted … from the recordings presented to the jury." The jurors heard only the portions of the recording where Thomas

described the Mercedes as a "luxury car" that should run on premium gas. In its opening statement, however, the government told the jury that it would hear about "jail phone calls" in which Thomas said that the Mercedes was "all paid for and that it cost him $30,000." Later in the trial, the defense on cross-examination asked the lead case detective: "You heard in a telephone call that Mr. Thomas said the car was worth $30,000, correct?" The detective answered "Yes." Since the challenged $30,000 statement was never actually played, the jury heard about it only in the government's opening and the defense's cross-examination of the detective. These discrepancies were not raised in the district court. We believe the most prudent way to proceed in this appeal is to review the district court's ruling to admit the $30,000 statement as if the statement had been included in the recording played for the jury as part of the evidence.

The district court did not abuse its discretion in deciding to admit this evidence. Thomas argues that the admission of this recording was cumulative because other evidence already indicated that he bought the Mercedes Benz shortly after the bank robbery. But Thomas would not stipulate to the value of the car being $30,000, and at trial he asked questions of witnesses suggesting, and argued in closing, that the value was much less.[3] The government wanted to introduce this statement because $30,000 was roughly half of the proceeds of the bank robbery. The value of the car was disputed and somewhat relevant, and Thomas's statement was not

---

[3] While questioning the detective, Thomas noted that the car had 149,800 miles on it and "had been shot up"—suggesting that "a car that's been shot by a gun tends to depreciate in value" and would not be worth $30,000. We express no opinion on the actual value of the car.

cumulative because it was the only evidence of the supposed $30,000 value of the car.

Thomas also argues that the reference to the "jail phone call" was unfairly prejudicial, but for reasons similar to those discussed above regarding his probation officer, the reference to his pretrial detention would have added little if anything to what the jury already knew about him. We have explained that a defendant "may have been somewhat prejudiced" by the admission of recordings of telephone calls he made while awaiting trial, but "the occasional reference to the fact that [the defendant] had at some point been in jail" while awaiting trial is unlikely "to undermine the presumption of innocence and the defendant's right to a fair trial." *United States v. Johnson*, 624 F.3d 815, 821–22 (7th Cir. 2010).

As with Officer Ellestad's testimony, discussed above, if Thomas had stipulated to the supposed $30,000 value of the car, the government would not have had a good reason to introduce this evidence. See *Loughry*, 660 F.3d at 974. The district court gave Thomas the opportunity to so stipulate, but he refused—again, as he was perfectly entitled to. But without a stipulation, this recording was the government's only evidence as to the supposed $30,000 value of the car. The value of the car was disputed, and the jail telephone call was neither cumulative nor unfairly prejudicial. The district court did not abuse its discretion by deciding to allow evidence of Thomas's statement that the Mercedes was worth $30,000.

C.  *"You" in the Government's Closing Argument*

For Count I—the bank-robbery offense—the government was required to prove that the money was taken from the bank "by force and violence, or by intimidation." 18 U.S.C.

§ 2113(a). "Intimidation exists when a bank robber's words and actions would cause an ordinary person to feel threatened, by giving rise to a reasonable fear that resistance or defiance will be met with force." *United States v. Gordon*, 642 F.3d 596, 598 (7th Cir. 2011). The district court instructed the jury to that effect: "the term 'intimidation' means to say or do something that would make a reasonable person feel threatened under the circumstances."

In its closing argument, the government used language describing this standard sometimes as objective and sometimes as subjective—referring sometimes to a "reasonable person" but also to "you," arguably asking the jurors to think about how they themselves would have felt. The district court firmly corrected the prosecutor in front of the jury: "This is the second time you violated the golden rule. It's not for you to decide what you personally would feel. It is what a reasonable person would feel, and I don't want you to do it again." The government apologized and explained to the jury: "So the judge is right. It's not what—it's the reasonable person standard, and you have to do the reasonable person standard."

Even if the prosecutor's language may have been improper, the court immediately corrected it. Thomas raised no objection, and he was not deprived of a fair trial. See *United States v. Common*, 818 F.3d 323, 331 (7th Cir. 2016) (court must first determine "whether the remarks by the prosecutor were improper when viewed in isolation," and if so, the court will then "evaluate them in the context of the entire record and determine whether defendant was deprived of a fair trial.") (citation and internal quotation marks omitted). We have explained: "As a general matter, improper comments during closing argument rarely rise to the level of reversible error,

and considerable discretion is entrusted to the district court to supervise the arguments of counsel." *United States v. Wilson*, 985 F.2d 348, 353 (7th Cir. 1993) (citation and internal quotation marks omitted); see also *United States v. Berg*, 640 F.3d 239, 253 (7th Cir. 2011).

There was no abuse of discretion here, let alone a plain error. Lawyers sometimes are not as precise as they should be when giving extemporaneous closing arguments. Even without an objection, trial judges have the power to intervene if they believe that language has strayed too far from the straight and narrow, as the judge did here. To determine the effect of prosecutorial comments on the fairness of the trial, we consider: "(1) the nature and seriousness of the alleged misconduct; (2) whether the defense invited the prosecutor's statements; (3) whether the jury instructions adequately addressed the matter; (4) whether the defense had an opportunity to respond to the improper remarks; and (5) the weight of the evidence against the defendant." *United States v. Klemis*, 859 F.3d 436, 442 (7th Cir. 2017). This minor misstatement of the standard, which Judge Conley corrected immediately, did not deprive Thomas of his right to a fair trial. The jury instructions used the proper standard, and, given the evidence that Thompson brandished a gun to terrify the robbery victims, nuances about the standards for intimidation were unlikely to have affected the verdict.

D. *Speedy Trial*

The Sixth Amendment guarantees the accused "the right to a speedy and public trial." In determining whether a pretrial delay violates the Speedy Trial Clause, we consider: "(1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his speedy trial right, and (4) the

prejudice to the defendant caused by the delay." *United States v. Koller*, 956 F.2d 1408, 1413 (7th Cir. 1992), citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972). Thomas claims that he was denied this right because his trial occurred almost eighteen months after his indictment. He contends that his convictions should therefore be vacated. Thomas did not raise this constitutional argument in the district court, so again we review only for plain error. See, e.g., *United States v. O'Connor*, 656 F.3d 630, 643 (7th Cir. 2011).[4]

"Delays of more than one year are considered presumptively prejudicial," but the presumption may be rebutted. *Id.* The delays here were for legitimate reasons, and Thomas is hard-pressed to point us to any actual prejudice he suffered. Thomas concedes that 281 days of the delay are not attributable to the government and are not an issue. This period includes the 161 days from his indictment until Thomas himself filed an unopposed motion to move the trial date. It also includes the next 120 days, from Thomas's motion to move the trial date until the conflict of interest arose with Thompson's counsel. The period at issue is the following 242 days, from the date of the hearing on the conflict, when the district court denied Thomas's request to keep his February 2017 trial date, until the date of his trial (October 16, 2017). Thomas seeks to attribute these 242 days of delay to the government.

This eight-month delay was unfortunate but justified. An issue arose when the government sought to question a witness who was also represented by Thompson's counsel, creating an irreconcilable conflict of interest. The district court

---

[4] Thomas objected to postponing the trial, but he did not raise a Sixth Amendment challenge.

accepted the government's judgment that the prospective witness's testimony was important. The postponement was necessary for Thompson to obtain new counsel, and the court viewed the delay as "nobody's fault," but rather "one of those irreconcilable conflicts" that required a continuance. We agree. While unfortunate, this sort of delay sometimes just happens with multiple defendants.

Thomas objected to the continuance and sought a trial separate from Thompson without further delay. That would have been a permissible response to the problem, but the government responded with a legitimate objection of its own, saying that it could not "put the [bank] tellers through two trials," given their psychological trauma. The district court "easily" determined that given the "nature of the government's witnesses," it would not put them through two trials. The government also explained that the delay was not ideal for the government itself because the bank-teller eyewitnesses, who had been traumatized by the robbery, were hoping to get the trial over with. These were all legitimate considerations in deciding how to solve an unexpected problem with no ideal solution.

We recognize that the delay meant that Thomas spent an additional eight months in pretrial detention. But the Supreme Court in *Barker v. Wingo* found that a total of ten months of detention before trial did not rise to the level of serious prejudice. 407 U.S. at 530 & 534; see *Koller*, 956 F.2d at 1414–15 (finding no Sixth Amendment violation where accused spent months in pretrial detention while government witness recovered from heart surgery). Thomas has failed to demonstrate any significant impairment in his defense as a result of the delay. He speculates that, but for the delay,

Thompson might not have decided to plead guilty and agree to testify against him. Perhaps, but we have explained that the fact that "the government was able to strengthen its case against [the defendant] during the delay … is not relevant to the prejudice analysis." *United States v. Gearhart*, 576 F.3d 459, 463 (7th Cir. 2009). The delay here did not violate the Speedy Trial Clause of the Sixth Amendment.

E.  *Jury Instructions*

Finally, Thomas argues that we should vacate his seven-year sentence on Count Two for aiding and abetting the brandishing of a firearm during and in relation to a crime of violence under 18 U.S.C. § 924(c)(1)(A)(ii) because the court erred in its jury instructions.[5] Thomas contends that the jury was not adequately instructed on the government's burden to prove he had advance knowledge that Thompson would brandish a firearm during the robbery. Thomas did not raise this issue in the district court, so he faces an "uphill battle" under plain-error review. See *United States v. Wheeler*, 540 F.3d 683, 689 (7th Cir. 2008). Regardless, the jury instructions here were not erroneous.

Section 924(c) provides that "any person who, during and in relation to any crime of violence or drug trafficking crime

---

[5] A "crime of violence" is defined as "an offense that is a felony and—(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3)(A) & (B). The Supreme Court has now invalidated subparagraph (B)—the residual clause—as unconstitutionally vague. *United States v. Davis*, 139 S. Ct. 2319, 2336 (2019). That decision does not affect this case. The bank-robbery count is covered by subparagraph (A).

… uses or carries a firearm," is subject to a five-year statutory-minimum consecutive sentence. 18 U.S.C. § 924(c)(1)(A)(i) & (D)(ii). The minimum consecutive sentence is increased to seven years "if the firearm is brandished." § 924(c)(1)(A)(ii). Under 18 U.S.C. § 2, a defendant who "aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." To apply the brandishing enhancement to Thomas, the jury needed to find beyond a reasonable doubt that Thomas knew in advance not only that Thompson would be carrying a firearm but also that he would be brandishing it. *United States v. Armour*, 840 F.3d 904, 911 (7th Cir. 2016).

The jury instructions here properly conveyed the government's burden to prove advance knowledge of brandishing to trigger the seven-year statutory-minimum sentence. Thomas's main argument is that the district court did not repeat the advance knowledge requirement in the instructions on the special verdict form. But the special verdict form tied its question directly to the instructions for Count Two, which properly included the advance knowledge requirement. A reasonable juror would not have understood this special verdict form to have dispensed with the advance knowledge requirement set forth clearly in the instructions for Count Two. The point of the special verdict form was to make sure there was unanimity on brandishing (as opposed to simply using or carrying). In no way did the form take away anything from the instructions to Count Two. It merely added this additional safeguard. The district court did not err in instructing the jury, let alone plainly err.

Thompson's appeal (No. 18-1519) is DISMISSED. The district court's judgment in Thomas's case (No. 18-1356) is AFFIRMED.